# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 3412 | **DATE** | 11/2/2000 |
| **CASE TITLE** | United States of America vs. Robert Mansfield (97 CR 278-3) | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ■ Status hearing set for 11/21/2000 at 9:30 A.M..

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **ENTER MEMORANDUM OPINION:** We order an evidentiary hearing for the sole purpose of developing the facts surrounding Mansfield's request to take an appeal.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| ☐ | No notices required, advised in open court. | | Document Number |
| ☐ | No notices required. | number of notices | |
| ☐ | Notices mailed by judge's staff. | | |
| ☐ | Notified counsel by telephone. | NOV 3 2000 date docketed | |
| ✓ | Docketing to mail notices. | 15 docketing deputy initials | 13 |
| ☐ | Mail AO 450 form. | | |
| ☐ | Copy to judge/magistrate judge. | | |
| SCT courtroom deputy's initials | | date mailed notice | |
| | Date/time received in central Clerk's Office | mailing deputy initials | |

ED-7 FILED FOR DOCKETING
00 NOV -2 PM 3:04

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
NOV - 3 2000

| | | |
|---|---|---|
| ROBERT MANSFIELD, | ) | |
| | ) | |
| Petitioner, | ) | 00 C 3412 |
| | ) | |
| vs. | ) | 97 CR 278-3 |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

Before the Court is Plaintiff Robert Mansfield's motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255. For the following reasons, we order an evidentiary hearing on the sole issue of whether Mansfield requested an appeal and his counsel refused or ignored the request.

### BACKGROUND

The United States Attorney's Office for the Northern District of Illinois (the "Government") and a federal grand jury conducted an investigation of alleged criminal activity involving the sale and attempted sale of various airplane parts. The investigation focused in part on Robert Mansfield ("Mansfield"). In particular, investigators were interested in a fax transmission Mansfield allegedly sent on

13

April 23, 1992, which contained an altered list of parts, serial numbers and certification information.

On April 16, 1997, Mansfield's attorney Michael H. King ("King") met with several Assistant United States Attorneys ("AUSAs") to try to negotiate the resolution of imminent charges against Mansfield. The running of the statute of limitations was approaching on April 23, 1997. On April 21, King sent a letter to the AUSAs stating that he and Mansfield were willing to extend the statute for an additional two weeks to permit additional "meaningful discussions to take place which might resolve the entire matter." The following day, the Government furnished Mansfield with a statement waiving the statute of limitations for a two-week period. On April 23, Mansfield and King returned the waiver to the Government. Both Mansfield and King signed and dated the waiver, and each initialed a handwritten addition to one of the waiver's provisions.

In his affidavit, King explains that he advised Mansfield to sign the waiver "so that we could continue discussions with the Government in an attempt to resolve the investigations against him and several family members." Apparently the Government had informed King that they were prepared to indict Mansfield on a broad array of charges if Mansfield did not agree to waive the statute of limitations, and King passed this information on to Mansfield. Eventually, after Mansfield signed the waiver, King

did prevail upon the Government to agree not to prosecute Mansfield's wife or daughter in connection with the airplane parts investigation. Also, the Government ultimately declined to seek indictment of Mansfield in connection with various potential charges such as contract and bankruptcy fraud and perjury that arose in connection with a business bankruptcy Mansfield had previously filed.

On August 3, 1998, Mansfield pled guilty to a single count of wire fraud. On June 17, 1999, this Court sentenced Mansfield to 15 months imprisonment.

According to affidavits from friends and family members, Mansfield had expected a sentence of home confinement or probation, not imprisonment. (Gerlich Dep. at ¶ 8; Mayer Dep. at ¶ 6.) Mansfield claims that upon receiving a sentence of imprisonment, he asked King to file a notice of appeal. (Mansfield Dep. at ¶ 4.) However, "Attorney King lead [sic] me to believe that I could not appeal these issues or any other issues that I may have believed to be appealable." (Id. at ¶ 3.)

In addition, Mansfield has supplied the affidavits of Carl Gerlich ("Gerlich"), Mansfield's son-in-law, and Joseph P. Mayer ("Mayer"), a friend. Both Gerlich and Mansfield were present at the sentencing hearing and conversed afterward with King, Mansfield and Mansfield's daughter. (Gerlich Dep. at ¶¶ 4-10; Mayer Dep. at ¶¶ 4-12.) Gerlich recalls that King said he "couldn't believe the sentence." (Gerlich Dep. at ¶ 5.) Mansfield asked King to appeal the sentence "because it didn't agree with the

agreement Mr. King worked out with the prosecutor." (Id. at ¶ 6.) King replied that Mansfield could not appeal because the appellate court would increase the sentence. (Id. at ¶ 7.) Instead, King suggested that Mansfield delay going to prison by requesting postponement of the sentence every 90 days due to Mansfield's wife's terminal illness. (Id.) Mansfield again asked King to appeal because the plea agreement "was supposed to result in a lighter sentence" of probation or home confinement, not imprisonment. (Id. at ¶ 8.) King, however, told Mansfield that he could not appeal because "you had to have a reason to appeal and that an appeal would result in a heavier sentence." (Id. at ¶ 9.)

Mayer's version of events resembles Gerlich's. Mayer recalls Mansfield asking King to appeal the sentence because Mansfield had expected probation or home confinement. (Mayer Dep. at ¶ 6.) King responded that there was "no basis for an appeal since Mr. Mansfield had entered a guilty plea" and added that an appeal could result in a longer sentence. (Id. at ¶ 7.) Mansfield again requested that King appeal, this time on the basis that the plea agreement had specified a lesser enhancement than what was given. (Id. at ¶ 8.) King declined, saying there was no basis for an appeal but Mansfield could postpone his surrender indefinitely due to his wife's terminal illness. (Id. at ¶ 9.) When Mansfield inquired as to whether any other grounds existed for reducing the sentence, King told him there were none. (Id. at ¶¶ 10-11.)

Attorney King's account differs from those of Mansfield, Gerlich and Mayer. King claims he told Mansfield immediately after the hearing that he had the right to appeal. (King Aff. at ¶ 2.) King opined that there were no good grounds for appeal, however, since an appellate court could reduce the "significant downward departure" that Mansfield had received. (Id.) King told Mansfield that he had ten days in which to decide whether to appeal. (Id.) King added that he would not handle Mansfield's appeal without the payment of at least a portion of the $70,000 in Mansfield's past due legal fees. (Id.)

King claims that he and Mansfield spoke by telephone approximately one week later. (Id.) In both the courthouse and telephone conversations, according to King, Mansfield stated explicitly that he did not want to appeal. (Id.)

Mansfield's term of imprisonment began on January 25, 2000. On June 6, 2000, Mansfield filed a motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255. This Court set a briefing schedule requiring the Government to answer the motion by July 25 and Mansfield to reply by August 8. We planned to rule on the motion on August 30, 2000. The Government failed to meet its July 25 deadline, however, prompting Mansfield to file a motion for judgment on the pleadings on August 2. Several weeks later, on August 22, the Government filed a motion to extend time to answer to Mansfield's motion. We granted the Government's motion. The Government finally filed its reply on August 28, 2000.

DISCUSSION

Mansfield's motion raises numerous challenges to his guilty plea and the resulting sentence. Because Mansfield is a prisoner appearing pro se, we construe his pleadings liberally as we are required to do. See Members v. Paige, 140 F.3d 699, 702 (7th Cir. 1998). We understand the grounds of Mansfield's claim to be that King allegedly: (1) failed to file notice of appeal of Mansfield's sentence; (2) ignored a potential statute of limitations defense; (3) failed to object to the prosecutor's destruction of Mansfield's seized property without a forfeiture proceeding; and (4) coerced Mansfield to plead guilty.

All of these allegations implicate Mansfield's constitutional right to effective assistance of counsel. See U.S. Const. amend. VI. Section 2255 offers redress for sentences "imposed in violation of the Constitution." 28 U.S.C. § 2255. Section 2255 motions are not a substitute for direct appeals, however. See Fountain v. United States, 211 F.3d 429, 433 (7th Cir. 2000) (citing Barnickel v. United States, 113 F.3d 704, 706 (7th Cir. 1997)). Claims not raised on direct appeal are barred from collateral review unless the reviewing court is convinced that a failure to consider the issue would result in a fundamental miscarriage of justice. See id. (citing Prewitt v. United States, 83 F.3d 812, 816 (7th Cir. 1996)). Ineffective assistance of counsel claims generally meet this latter requirement, in that they may not be appropriate for direct review

because they often rely on evidence outside the record. See id. at 433-34 (citing United States v. D'Iguillont, 979 F.2d 612, 614 (7th Cir. 1992)). Thus, Mansfield has found in section 2255 a proper vehicle for his ineffective assistance of counsel claim.

That said, petitioners bear a heavy burden in stating winning claims of ineffective assistance of counsel. See United States v. Trevino, 60 F.3d 333, 338 (7th Cir. 1995). In order to prevail, petitioners must demonstrate that counsel's performance fell below an objective standard of reasonableness and that the deficient performance so prejudiced his defense that it deprived him of a fair trial. See Strickland v. Washington, 466 U.S. 668, 688-94, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). With respect to the first prong of this test, reasonable performance, the Seventh Circuit has instructed courts to "evaluate the conduct from counsel's perspective at the time, and [to] indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." United States v. Ashimi, 932 F.2d 643, 648 (7th Cir. 1991). As for the second prong, prejudice, petitioners must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." United States v. Starnes, 14 F.3d 1207, 1209-10 (7th Cir. 1994).

Where an attorney disregards specific instructions from the defendant to file a notice of appeal, that conduct is professionally unreasonable. See Rodriguez v. United

States, 395 U.S. 327, 89 S.Ct. 1715, 23 L.Ed.2d 340 (1969). The Seventh Circuit has held that an attorney's failure to file an appeal despite a defendant's request to do so constitutes ineffective assistance of counsel per se. See Castellanos v. United States, 26 F.3d 717, 718 (1994). The court reasoned that "[i]f the defendant told his lawyer to appeal, and the lawyer dropped the ball, then the defendant has been deprived, not of effective assistance of counsel, but of any assistance of counsel on appeal." Id. Such a scenario reflects a constructive abandonment of the defendant by counsel and constitutes a per se violation of the Sixth Amendment. See id. Under these circumstances, the defendant need not show prejudice in order to prevail on the ineffectiveness claim. See id. at 720.

The Castellanos court noted that some defendants may make imprudent requests for appeals. See id. at 719. In this event, the attorney remains free to try to dissuade the defendant. See id. But if the defendant insists on proceeding with the appeal despite the attorney's input, the attorney must file the notice of appeal. See id. The linchpin of Castellanos is the request: if the client persists in requesting the appeal, the lawyer must pursue it. See id.

Thus, courts can grant relief only if the defendant requested that counsel file an appeal and counsel refused or ignored the request. See id. If the petitioner makes a prima facie showing that he did in fact request that counsel file an appeal, an

evidentiary hearing must be held. See Stoia v. United States, 22 F.3d 766, 768 (7th Cir. 1994); see also 28 U.S.C. § 2255 (stating conversely that if the "file and records of the case conclusively establish that the defendant is entitled to no relief" a court may properly deny a section 2255 petition).

The case at bar poses a he-said, she-said dilemma. Mansfield and two of his comrades claim that he persisted in requesting an appeal despite his attorney's representations as to the impossibility and imprudence of doing so. King, by contrast, claims that he advised Mansfield of the foolishness of pursuing an appeal, and Mansfield eventually agreed. These contrasting accounts raise factual questions that require an evidentiary hearing.

We find sufficient reason to hold an evidentiary hearing due to Mansfield's claimed persistence in requesting an appeal and what his affiant claim was his attorney's reluctance. Gerlich's brief affidavit refers to two requests by Mansfield to appeal. Mayer recalls three requests by Mansfield. Furthermore, Mansfield himself describes his persistence despite King's urgings to the contrary. Mansfield ends his affidavit with this critical statement: "Therefore, failing to file Notice of Appeal and Appealing the above, and any other appealable issues. [sic] I requested him to do so." Despite the confusing syntax, Mansfield's affidavit ends on a compelling note: the request for an appeal. This statement, along with the recollections of Gerlich and

Mayer, places Mansfield squarely within Castellanos' edict: if a defendant insists on pursuing an appeal despite the attorney's advice to the contrary, the attorney must nonetheless comply with the defendant's wishes. See Castellanos, 26 F.3d at 719.

We find that Mansfield has made a prima facie showing that he requested an appeal and counsel refused or ignored the request. Without further factual development, we cannot conclude that no constructive abandonment of counsel occurred in this case. See id. at 718. This case merits a more searching inquiry into the events surrounding the failure to file an appeal. Thus, we order an evidentiary hearing on the issue of the request for appeal.

That said, we wish to clarify the contours of the evidentiary hearing. The hearing will address only the issue of whether Mansfield persisted in requesting that counsel appeal the sentence and counsel refused to do so. The hearing will not address any of the other grounds raised in Mansfield's motion because we find them frivolous.

For instance, we need not adduce additional facts about Mansfield's allegation that King had an obligation to appeal the sentence because the Government failed to adhere to its promise to recommend only a two-point upward adjustment in Mansfield's offense level for his role in the offense. The plea agreement shows that the Government never agreed to such a recommendation. Instead, in the agreement the Government recommends a four-point upward adjustment and the defense counters that

a two-point adjustment would be more appropriate. The Government made no promises. Rather, the parties left the matter unresolved.

Nor will the hearing address Mansfield's claim that King knew of a potential statute of limitations defense yet failed to invoke it on Mansfield's behalf. This contention does not accord with the facts set forth by all of the parties involved. The facts before us indicate that Mansfield knowingly and intelligently signed a waiver of the statute of limitations for a two-week period. King offers a plausible, indeed familiar, justification for advising his client to sign the waiver: he wanted to avoid imminent indictment and seek additional time to negotiate with the Government in hopes of striking a settlement to benefit Mansfield. In addition, the text of the waiver rebuts Mansfield's claim. Both Mansfield and his attorney signed the waiver. In fact, Mansfield and King even took the time to handwrite and initial an amendment on the face of the document. All of these factors indicate a knowing and intelligent waiver of the statute of limitations for a two-week period.

In addition, Mansfield's claim of coercion by his attorney does not merit an evidentiary hearing. Mansfield contends that King told him that if he refused to sign the statute of limitations waiver he would be charged with obstruction of justice and his wife and daughter could be indicted. Assuming this statement to be true, nothing suggests any coercion on King's part. Instead, King appears merely to have related to

Mansfield what the Government had told him. Nor does King appear to have coerced Mansfield into a guilty plea in order to hide his own lack of preparation for trial. Mansfield has not produced one shred of evidence to support this claim.

Last, Mansfield claims that King should have objected to the prosecution's destruction of Mansfield's seized property without a hearing. This allegation is vague and unsubstantiated. Mansfield failed to specify what property was seized, nor does he describe the events surrounding the seizure. Despite our attempts to construe this claim as generously as possible, we are unable to discern a cognizable claim from this portion of Mansfield's motion. Accordingly, we find that it does not merit further exploration in an evidentiary hearing.

## CONCLUSION

For the foregoing reasons, we order an evidentiary hearing for the sole purpose of developing the facts surrounding Mansfield's request to take an appeal.

_Charles P. Kocoras_
Charles P. Kocoras
United States District Judge

Dated: November 2, 2000